STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Hale Mountain Fish & Game Club | } | Docket Nos. 149-8-04 Vtec |
| | } | and 259-12-05 Vtec |
| | } | |

## Interim Decision

These consolidated appeals arise out of decisions by the Zoning Board of Adjustment ("ZBA") of the Town of Shaftsbury ("the Town") to not direct that zoning enforcement actions be initiated against Appellee Hale Mountain Fish & Game Club, Inc. ("Hale Mountain" or "the Club"). Appellants Owen and Kathy Beauchesne are represented by Paul S. Gillies, Esq. Appellee Hale Mountain is represented by Rodney E. McPhee, Esq.

Appellants have moved for summary judgment on all issues presented in their Statements of Questions. Hale Mountain believes that genuine issues of material fact are in dispute, opposes the motion for summary judgment, and seeks a trial on the merits.

## Factual Background[1]

1. Hale Mountain, a non-profit Vermont corporation, is a general membership hunting and fishing sports club located on approximately 215 acres that it owns on Rod and Gun Club Road in the Town of Shaftsbury.

2. Appellants Owen and Kathy Beauchesne own approximately 161 acres adjacent to the Club in the Town of Shaftsbury.

3. Appellants use their land for farming and "make a living off [their] farm land . . . through [their] farm activities year around." Appellants' Ex. 2 at ¶ 2.

4. Appellants assert that between the initial acquisition of their land in 1986 and approximately 1994 "no noise" came from the Club, save for occasional gun shots around the hunting seasons as hunters sighted their firearms. Appellants assert that otherwise, "you never heard a single gun shot." Id. at ¶¶ 1-4. Hale Mountain disputes this assertion, and has presented an affidavit and pre-filed testimony from its Board Chairman detailing nearly 60 years of shooting-related activity on the Club's land. Hale Mountain's Ex. A; see also Ex. B at 17 (where

---

[1] All facts are undisputed unless otherwise noted. For the purposes of this motion only, we address the question of whether genuine issues of material fact exist by giving Hale Mountain the benefit of "all reasonable doubts and inferences," since it is the nonmoving party. Thompson v. Hi Tech Motor Sports, Inc., 2008 VT 15, ¶ 4 (quoting Samplid Enters., Inc. v. First Vt. Bank, 165 Vt. 22, 25 (1996)).

Mr. Logan states "that the level, type, frequency and intensity of shooting has essentially been the same over the course of the Club's history").

5.      Appellants and Hale Mountain appear to agree that physical and structural changes have been made to the Club property. These include, but may not be necessarily limited to the following: extension and/or expansion of a rifle range to 437 yards in 1991; construction of a "trap field pavilion" in 1991; placement of a "caretaker's trailer" on the property in 1994; construction of a cover for the Club's pistol range in 1995; construction of an earthen berm to isolate the pistol range from the rifle range in the middle 1990s; replacement of a garage in 1998; placement of a "five-stand trap shooting trailer" on the property in 2002; and either the construction or reconstruction of a "trap house pad and walkway" in 1991.

6.      Though Appellants and Hale Mountain appear to agree upon what changes were made on the Club's property and when those changes were made, they do not agree upon whether these changes were properly permitted when they were made. Nor do they agree about whether the changes and improvements currently satisfy the strictures of the Town of Shaftsbury Zoning Bylaw ("Zoning Bylaws").

7.      Appellants also contend that the Club has recently introduced a new shooting sport called "sporting clays" to its facility. Appellants believe that participants in this new sport on Hale Mountain's land have damaged trees around the Club with gunfire, polluted a nearby stream with lead, and caused additional noise disturbances on Appellants' farm.

8.      Appellants sought an enforcement action against Hale Mountain for violating the Zoning Bylaws sometime before July 28, 2004,[2] but the Zoning Administrator of the Town of Shaftsbury ("ZA") declined to pursue an enforcement action. See Town of Shaftsbury, Zoning Board of Adjustment, Report of Action (July 28, 2004).

9.      On appeal, the ZBA agreed with Appellants on one point, that permits were not obtained for a shooter's shelter and a rifle shooting area, but disagreed on the remaining issues and denied their appeal. Id. Appellants' appeal of the July 28, 2004 decision is the basis of Docket Number 149-8-04 Vtec.

10.     Hale Mountain cross-appealed the ZBA's decision that Hale Mountain did not obtain proper permits for its shooter's shelter and rifle shooting area.

---

[2] Although a copy of the 2005 Decision has been provided, the procedural events leading to that decision are absent from the record.

11. On May 3, 2005, Appellants contacted the ZA and again asked the ZA to pursue an enforcement action against Hale Mountain for its alleged violations of the Zoning Bylaws. Town of Shaftsbury, Zoning Board of Adjustment. The ZA took no action on Appellants' request, and Appellants thereafter appealed to the ZBA.

12. The ZBA allowed Appellants to present evidence regarding the alleged violations on October 19, 2005. See, Findings of Fact, Conclusions of Law and Decision (Dec. 2, 2005) ("2005 Decision"). In its 2005 Decision, the ZBA denied Appellants' request for enforcement, reasoning that all relevant issues regarding the controversy between Hale Mountain and Appellants were before this Court in Docket Number 149-8-04 Vtec. Id.

13. Appellants appealed the ZBA's 2005 Decision to this Court on December 12, 2005. That appeal forms the basis of the controversy in Docket Number 259-12-05 Vtec.

## Discussion

Appellants have submitted a total of 25 questions in their Statements of Questions in the two above-captioned appeals. Put very broadly, these 25 questions ask whether Hale Mountain has violated the Zoning Bylaws first by not seeking the appropriate zoning permits and second by making changes to its property in contravention of the Zoning Bylaws' substantive standards. However, a number of the questions in Docket Number 259-12-05 Vtec are in a sense duplicative of and correspond to questions raised in Docket Number 149-8-04 Vtec. Most of the Questions in the later appeal rephrase a Question in the earlier appeal in terms of whether the ZA should bring an enforcement action against Hale Mountain.[3] Our review of both sets of Statements of Questions shows that Question 1 in the earlier Docket corresponds to Question 2 in the later Docket, that Question 2 in the earlier corresponds to Question 3 in the later, and so on, through to Question 11 in the earlier, which corresponds to Question 12 in the later.[4] Appellants also ask in Docket No. 259-12-05 Vtec "[w]hether the failure of Shaftsbury to provide a copy of its written decision to Appellants 45 days [after] the close of the hearing without any written decision being issued by the ZBA constitutes a default[;]" inquire about "[w]hat uses and structures were in existence at Hale Mountain in 1970, when zoning was first

---

[3] For example, in Docket Number 149-8-04 Vtec, Question 10 of Appellants' Statement of Questions asks "Whether Hale Mountain has violated Section 8.1 of the Bylaws, by violation [sic] the terms of its existing permits (Nos. 1605, 88-2422 and 99-3703)" and in Docket Number 259-12-05 Vtec, Question 11 asks "Whether the Zoning Administrator for Shaftsbury should bring an enforcement action against Hale Mountain for violation of Section 8.1 of the Bylaws, by violation [sic] the terms of its existing permits (Nos. 1605, 88-2422 and 99-3703) . . .."

[4] There are additional differences: Questions 3, 9, and 10 in the later Docket ask whether Hale Mountain's activities conform with Zoning Bylaws §§ 3.2.8 and 7.4, sections not implicated by the earlier Docket.

enacted[;]" and ask whether injunctive relief may be sought against Hale Mountain to prevent it from continuing any unpermitted uses it might conduct and, presumably, to remove any unpermitted improvements constructed since 1970.

For the purpose of these motions, we note that summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3).

A party requesting summary judgment assumes the burden of demonstrating the absence of a genuine issue as to any material fact. State v. Great Northeast Prods., Inc., 2008 VT 13, ¶ 8 (mem.). In response, a party opposing a motion for summary judgment supported by affidavits cannot rest only on the allegations in its pleadings; it must offer its own statement of contested material facts, complete with "specific citations to the record," that it contends demonstrate genuine disputed issues of material fact. V.R.C.P. 56(c)(2); see also V.R.C.P. 56(c)(3) (noting that summary judgment is appropriate when the statements, and the evidence to which they refer, show no genuine issue as to any material fact). Otherwise, "all material facts set forth in the [moving party's statement] will be deemed admitted unless controverted" by the nonmoving party's statement. Id.

The purpose of this provision in the Rules is to focus the parties' arguments by requiring specific reference to the record and to prevent generalized claims that material facts either are or are not in dispute. Gallipo v. City of Rutland, 2005 VT 83, ¶ 30, 178 Vt. 244, 258 (2005). While strict application of Rule 56(c)(2) is not always appropriate, on motion for summary judgment, litigants have been precluded from disputing facts not properly disputed. See Gallipo, 2005 Vt 83, ¶ 33, 178 Vt. at 259-60 (citing Travelers Ins. Cos v. Demarle, Inc., 2005 VT 53, ¶¶ 6, 9, 178 Vt. 570, 572-74 (2005) and Boulton v. CLD Consulting Eng'rs, Inc., 2003 VT 72, ¶ 29, 175 Vt. 413 (2003)).

In this de novo appeal, we are directed to apply the substantive standards that were applicable before the ZBA; this forms our opinion about which facts are material. 10 V.S.A. § 8504(h), V.R.E.C.P. 5(g); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 ("As to materiality, the substantive law will indentify which facts are material").

Appellants' essential contention is that Hale Mountain has, through the years, failed to obtain proper zoning approval for the material changes it has made to its property and the uses

thereon. Many of the Appellants' first twelve questions in their Statement of Questions in Docket Number 149-8-04 Vtec ask whether Hale Mountain has violated a provision of the Zoning Bylaws that relates to seeking zoning approval.

In this first Statement of Questions and in the second Statement of Questions from the companion appeal, Appellants have asked whether Hale Mountain's changes comport with the Zoning Bylaws' regulations generally (Question 1, implicating Zoning Bylaws § 3.1.1), whether the uses on the Club's property have been properly approved (Question 2 - §§ 3.3.1, 3.3.2), whether some uses have been properly approved as conditional uses (Question 3 - § 3.5), whether Hale Mountain has consulted the appropriate state agencies (Question 4 - § 3.6), broadly whether Hale Mountain's site development plans have been properly reviewed and approved (Question 5 - § 3.7), whether any of the uses on the Club's property are nonconforming (Question 6 - §§ 4.1, 5.1, 7.1),[5] whether improvements near streams, watercourses, and wetlands have been properly approved by the ZBA or the appropriate state agency, including the mobile trailer (Questions 7, 8, and 9 - §§ 3.5, 3.6, 7.2.1, 7.2.5, 7.5.2.4), whether Hale Mountain violated any of its existing permits (Question 10 - § 8.1), and whether Hale Mountain sought approval for a sign it placed on its property (Question 11 – Appx. B).

Thus, the controversy in these appeals centers upon whether Hale Mountain sought and obtained the proper permits to make the improvements that it has constructed and to change the uses that it has changed. While Appellants have presented evidence that suggests that Hale Mountain has made substantial changes to its property since 1986, we cannot say that Appellants' assertions that Hale Mountain failed to acquire the appropriate permits are "so clearly correct as to [entitle Appellants] to a judgment 'as a matter of law.'" Berlin Dev. Assocs. v. Dept. of Soc. Welfare, 142 Vt. 107, 110 (1982) (quoting V.R.C.P. 56(c)). Appellants have thoroughly described the alleged impact that gunfire from the Club has caused, but there has been little made of the Club's zoning and permitting history. Appellants' Statement of Material Facts, moreover, details only what changes may have been made, but does not explain factually whether these lacked proper permit authority.

This history is material because the essential question is whether Hale Mountain has conformed with the Bylaws when developing its property. See, e.g., Zoning Bylaws § 3.1.1

---

[5] This Question also addresses whether Hale Mountain has sought the appropriate zoning permits and approvals because any change from a lawful, pre-existing nonconforming use to another nonconforming use requires ZBA Approval. Zoning Bylaws § 7.1.1.1. This would presumably also encompass Appellants' Question 12, which asks what uses were in existence before 1970.

(requiring that development, including extension, enlargement, and reconstruction, be done in conformance with the Bylaws). Therefore, we cannot conclude that Appellants are entitled to summary judgment, as they have not fulfilled their initial burden on summary judgment to show an absence of contested material facts. Alpstetten Ass'n, Inc. v. Kelly, 137 Vt. 508, 515 (1979).

Moreover, in response to Appellants' contentions that the Club has failed to secure the proper permits over the years, Hale Mountain has provided affidavits detailing the history of the uses and structures that existed on the Club's land as well as some documentary evidence regarding the Club's permits and made proper reference to this evidence in its Statement of Contested Material Facts. See Affidavit of James Logan (detailing the history of the uses on the Club's land); see also Hale Mountain's Ex. A (1998 Town of Shaftsbury Zoning Permit allowing construction of a garage for storage). These affidavits and other evidence also suggest that a number of the improvements and changes that Appellants challenge may have existed prior to adoption of the Zoning Bylaws, and therefore may not have required additional zoning permits or development review.

Because the parties genuinely dispute material facts in this case, namely Hale Mountain's permitting history, summary judgment must be **DENIED**.

Appellants have also asked in Docket Number 259-12-05 Vtec whether the ZBA's "failure . . . to provide a copy of its written decision to Appellants within 45 days [after] the close of the hearing" entitles them to the deemed approval remedy authorized in 24 V.S.A. § 4464(b).

We are advised that deemed approval is to be conservatively applied, and is intended to remedy protracted deliberation and to eliminate deliberate or negligent inaction by public officials. See In re: Miller Conditional Use Application, Docket No. 59-3-07 Vtec slip op. at 8-9 (Vt. Envtl. Ct. Nov. 5, 2007) (citing In re McEwing Svcs., LLC., 2004 VT 53, ¶ 21, 177 Vt. 38, 46 (2006)). The remedy is inappropriate where there has been a timely decision, but that decision fails to meet some other requirement of the deemed approval statute. See McEwing, 2004 VT 53, ¶ 21, 177 Vt. at 46 (collecting cases where deemed approval was inappropriate).

Our review of the record indicates that a hearing on the application that gave rise to the appeal in Docket Number 259-12-05 Vtec was held on October 19, 2005. 2005 Decision at 1. That Decision was issued on December 2, 2005, 44 days after the hearing. Id. at 3. Because the 2005 Decision was therefore timely, we discern no protracted deliberation or deliberate or negligent inaction. Therefore, summary judgment is **DENIED** on the deemed approval issue.

Lastly, it is inappropriate for us to consider whether the ZA ought to have pursued an enforcement action for injunctive relief at this time. If a zoning violation exists on Hale Mountain's property, the ZA must first initiate an enforcement action before seeking injunctive relief.

A zoning administrator's obligation to initiate an enforcement action in the face of a zoning violation is unequivocal; the Zoning Bylaws do not confer any discretion upon the ZA to decide whether to permit land development not in conformance with the Bylaws. See Zoning Bylaws § 8.2.1 ("The Administrative Officer shall administer the bylaws literally, and shall not have the power to permit any land development that is not in conformance with such bylaws") (emphasis added). Moreover, the bylaw violation enforcement statute provides that "[i]f any . . . building, structure, or land is or is proposed to be erected, constructed, reconstructed, altered, converted, maintained, or used in violation of any bylaw . . . the administrative officer shall institute . . . any appropriate action [or] injunction" to correct the violation. 24 V.S.A. § 4452 (emphasis added). Both the Zoning Bylaws and the statute, as our Supreme Court has noted, are unequivocal: "[t]he administrative officer has no discretion as to whether to enforce the bylaws in this case; the officer must do so." In re Petition of Fairchild, 159 Vt. 125, 130 (1992). Also, relief in the form of mandamus may be available should the ZA refuse to perform nondiscretionary duties. Id. However, we have yet to determine whether Hale Mountain's actions were in violation of the Zoning Bylaws. Thus, answering the question of whether the ZA should have pursued injunctive relief would be premature.

Similarly, without an answer to the question of whether Hale Mountain has violated the Zoning Bylaws, we are unable to balance the relative hardships to the parties and grant injunctive relief under 24 V.S.A. § 4452. See Okemo Mountain, Inc. v. Town of Ludlow, 171 Vt. 201, 212 (2000) ("[t]o determine whether an injunction is appropriate, the court must weigh the relative hardships on the parties, looking at 'the relative convenience or inconvenience, the relative injury sought to be cured as compared with the hardship of injunctive relief'") (quoting Fenwick v. City of Burlington, 167 Vt. 425, 431 (1997)). Therefore, summary judgment must be **DENIED** on the issues of the appropriate level of injunctive relief and whether the ZA ought to initiate an enforcement action against Hale Mountain.

## Issue Preclusion

We are aware that Hale Mountain and its neighbors may have litigated issues relating to the Club's development activities and permitting history in other fora. Specifically, in a recent

entry order relating to the Club's Act 250 permitting history, our Supreme Court noted that the Club's neighbors had raised questions regarding potential changes in intensity and use on Club property, potential impacts on streams and wetlands, and other issues of concern to Hale Mountain's neighbors. In re Hale Mountain Fish and Game Club, Inc., 2007 VT 102 (mem.). The Court remanded Hale Mountain's Act 250 case, finding that the district commission had failed to make sufficient findings and conclusions on the issues the neighbors had presented. Id. at ¶¶ 11-12. While those proceedings concern different land use regulations than those at issue in these appeals (i.e., Act 250 vs. zoning), the central legal question may be similar: whether the changes in use and development at the Club have been so material as to trigger regulatory jurisdiction.

The doctrine of issue preclusion prevents re-litigation of an issue that was decided in an earlier case and was necessary to the disposition of that case. See In re T.C., 2007 VT 115, ¶ 20 (quoting Scott v. City of Newport, 2004 VT 64, ¶ 8, 177 Vt. 491 (2004)). The doctrine applies when:

> (1) it is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits; (4) there was a full and fair opportunity to litigate the issue in the prior action; and (5) its application is fair.

In re Stormwater NPDES Petition, 2006 VT 91, ¶ 23, 180 Vt. 261, 275 (2006). It is unclear from the record before us now whether the issues decided in the Hale Mountain Act 250 case preclude litigation of some of the issues in this case. The parties should be prepared to discuss this question at the pre-trial conference now set for Tuesday, April 1st at 1:30 PM.

## CONCLUSION

For all the forgoing reasons, we **DENY** Appellants' Motion for Summary Judgment. This matter remains scheduled for a multi-day trial, commencing on April 7, 2008. A final pre-trial conference is scheduled for Tuesday, April 1, 2008 at 1:30 PM to determined the import of the related Act 250 appeal proceedings, now again pending before the Supreme Court.

Done at Berlin, Vermont this 25th day of March, 2008.

                                    _____
                                    Thomas S. Durkin, Environmental Judge

- 8 -