2008 VT 13

**STATE of Vermont v. GREAT NORTHEAST PRODUCTIONS, INC.**

[945 A.2d 897]

No. 07-304

*Teachout*, J.

¶ 1. February 6, 2008. The State appeals from the superior court's grant of summary judgment to Great Northeast

Productions, Inc. (GNP) on a contract dispute. The State seeks indemnification for monies it paid on a workers' compensation claim after an investigator for the Department of Liquor Control pulled his left groin muscle at a GNP event, and later developed Fournier's Gangrene. The State claims that, under the contract, GNP is obligated to indemnify it for the investigator's claim. The superior court held that, because the State failed to produce evidence of causation linking the Fournier's Gangrene to the work injury, the State was not entitled to indemnification under the contract. We affirm.

¶ 2. The relevant facts may be briefly stated. GNP and the State entered into a contract by which the State granted GNP the temporary use of certain state-owned land in Coventry, Vermont to stage, promote and conduct a two-day series of concerts. The contract referred to the concerts, as well as parking, camping, concessions, and other activities appurtenant to the concerts, as "the Event." The contract's indemnification clause read as follows:

> GNP agrees to defend and indemnify and hold the State of Vermont . . . harmless of and from any and all loss or liability with respect to any and all claims, causes of action, losses, or other expenses, that arise out of, relate to, or are in any manner connected with the Event . . . including liability for damages to property or for injuries or death to persons which may arise from, or be attributable to or incident to the use by GNP, or any concert attendee, of the property . . .

The contract also provided that "GNP shall reimburse the [S]tate for any reasonable attorney's fees incurred by the State . . . in securing compliance with the provision of [the] indemnification agreement." In addition, the contract required GNP to obtain several different kinds of insurance, including workers' compensation insurance, and provided that "[e]ach policy shall name [the State] as [an] additional insured[] for possible liability arising out of, relating to, or connected in any manner with the Event or the State's supervision of GNP's or others' actions in connection with the Event."

¶ 3. In the course of his employment, an investigator for the State's Department of Liquor Control slipped in mud at the Event and pulled his left groin muscle. The investigator filed a workers' compensation claim with the State. He later developed Fournier's Gangrene — a necrotizing infection of the genitalia — that required him to undergo several surgeries and a long period of hospitalization. The State paid a total of $259,422.49 in workers' compensation benefits to the investigator. The State then brought suit against GNP to recover reimbursement for that amount.

¶ 4. The State filed a motion for summary judgment on its claim. In response thereto, GNP filed a five-page memorandum of law opposing the State's motion and cross-moving for summary judgment. Appended to GNP's memorandum was a document entitled "[GNP's] Statement of Disputed Facts in Opposition to [the State's] Motion for Summary Judgment and In Support of Its Cross Motion for Summary Judgment." GNP's statement did not conform to the formal requirements of V.R.C.P. 56(c)(2) in that it did not include a statement of undisputed facts. However, GNP devoted four out of the five pages in its memorandum of law to arguing that the State had not produced any evidence that the investigator's Fournier's Gangrene was causally related to the injury sustained at the Event. The superior court granted GNP's motion, and this appeal followed.

¶ 5. We review a motion for summary judgment using the same standard as the trial court: summary judgment is appro-

priate only when the moving party has demonstrated that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *In re Estate of Price,* 2006 VT 62, ¶ 9, 180 Vt. 548, 904 A.2d 1196 (mem.); *O'Donnell v. Bank of Vt.,* 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997).

¶ 6. The State argues that the superior court erred in granting summary judgment for GNP because GNP failed to submit its own statement of undisputed material facts to support its cross-motion for summary judgment as required by V.R.C.P. 56(c)(2). According to the State, by not including the statement, GNP failed to meet its burden of showing the absence of controverted material facts. Under V.R.C.P. 56(c)(2), the party moving for summary judgment is required to annex to the motion "a separate, short, and concise statement of the material facts as to which the moving party contends that there is no genuine issue to be tried." The purpose of V.R.C.P. 56(c)(2) "is to focus more directly the arguments on motions for summary judgment by requiring specifications by the parties as to the facts that they contend either are or are not in dispute." Reporter's Notes, V.R.C.P. 56, 1995 Amendment. Unfortunately, trial courts are often in the position of adjudicating summary-judgment motions on the basis of nonconforming documents. See, e.g., *Millett v. Gorczyk,* No. 44-2-01 Oscv, 2001 WL 36085152 (Vt. Super. Ct. Nov. 8, 2001); *Bartus v. Owl's Nest Lodge (1999), Inc.,* No. 169-3-04 Rdcv, 2005 WL 5895208 (Vt. Super. Ct. 2005); *Houston v. Town of Waitsfield,* No. 540-9-05 Wncv, 2006 WL 4911326 (Vt. Super. Ct. Feb. 7, 2006). This Court will not disturb a trial court's reliance on a nonconforming summary-judgment motion absent an objection, *Kelly v. Town of Barnard,* 155 Vt. 296, 301-02, 583 A.2d 614, 617 (1990), or absent prejudice. See *In re Buell,* No. 2003-079 (Vt. Dec. 4, 2003) (unreported mem.) (holding that

summary judgment for State appropriate notwithstanding State's failure to annex a statement of undisputed facts to its summary-judgment motion where petitioner was aware of facts relied upon by State and never disputed them).

¶ 7. We find no reversible error here. GNP's memorandum provided the State with ample notice as to GNP's legal argument — indeed, the State acknowledges that GNP's cross-motion alleged that "the State had submitted no evidence that [the investigator's] Fournier's Gangrene was causally related to the event." That GNP was contending that the State could not produce such evidence was clear from its memorandum. The State did not have to "guess at what [GNP's] factual contention might be" nor was it "deprived . . . of the opportunity to deny [this] contention . . . and attach evidence in support of its denial." The State had ample opportunity to deny GNP's contention and attach evidence of a causal relationship. The State failed to do so at its peril; it was not prejudiced by the nonconformity of GNP's filing.

¶ 8. Moreover, as a technical matter, GNP was not arguing the existence of an undisputed fact at all, but rather that it was entitled to judgment as a matter of law because the State had no admissible evidence on causation. Because the State carried the burden of persuasion on its claim, GNP need have done no more. See *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 18, 665 A.2d 580, 583 (1995) ("Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case."). Given the nature of GNP's grounds for summary judgment, it would be exalting form over substance if we were to reverse the superior court's summary-judgment ruling on the ground that GNP failed to annex a separate statement of undisputed facts to its cross-motion.

¶ 9. Neither did the superior court err by concluding that the contract required a causal connection between the Fournier's Gangrene and the Event to trigger a duty of indemnification. Because the construction of a contract is a matter of law, this Court makes its own determination as to the proper legal effect of the terms of an agreement. *Universal Underwriters Ins. Co. v. Allstates Air Cargo, Inc.*, 2003 VT 8, ¶ 7, 175 Vt. 475, 820 A.2d 988 (mem.). However, as long as the trial court's construction is reasonable, we will sustain it. *Murphy v. Stowe Club Highlands*, 171 Vt. 144, 152-53, 761 A.2d 688, 695 (2000); *Cooperative Fire Ins. Ass'n of Vt. v. Bizon*, 166 Vt. 326, 333, 693 A.2d 722, 727 (1997). The superior court's construction of the indemnification provision at issue in this case was reasonable and correct.

¶ 10. The State's argument turns on the meaning of the word "claim" as used in paragraph eight of the contract. The State argued that GNP was obligated to indemnify it for payments made to the investigator because his "claim" — his *assertion of a right* — was connected with the Event. GNP argued, and the superior court agreed, that in order to establish entitlement to indemnification, the State must prove that the investigator's claim — his *actual right* to recover from the State — was causally related to the Event. While the word "claim" can mean either the assertion of a right or the right itself, Black's Law Dictionary 264 (8th ed. 2004), it would be unreasonable to read paragraph eight as a promise to indemnify the State based on the assertion of a right — however lacking in merit — and nothing more. See *Reynolds v. Sterling College, Inc.*, 170 Vt. 620, 622, 750 A.2d 1020, 1023 (2000) (mem.) (the Court will "avoid construing . . . contract[s] in a manner that leads to . . . unreasonable results"). Such a reading would entitle the State to indemnification for gratuitous workers' compensation payments as well as payments for which the State was actually liable. As the State argues, the contract does provide broad protection from liability. But requiring GNP to reimburse the State even though the investigator did not prove the State's liability — or, in other words, that his Fournier's Gangrene was connected to the work-related injury — would not serve the purpose of protecting the State from liability. Instead, it would provide a windfall to the State, the investigator, and ultimately the investigator's health-insurance provider.

¶ 11. The State is liable for workers' compensation benefits for expenses related to an injury only if a claimant can prove that the injury was the result of an accident arising out of and in the course of the claimant's employment. *Goodwin v. Fairbanks, Morse & Co.*, 123 Vt. 161, 166, 184 A.2d 220, 223 (1962); 21 V.S.A. § 618(a)(1). In this case, the only evidence connecting the investigator's Fournier's Gangrene with the Event was a doctor's statement that the groin pull "may have" caused the condition. Alone, this statement would have been legally insufficient to support a finding of causation had the State required the investigator to prove his entitlement to the benefits it awarded him. See *Lapan v. Berno's Inc.*, 137 Vt. 393, 395, 406 A.2d 390, 392 (1979) (the "determination that the claimant's disability occurred by reason of an accident at work is supported only by speculation or surmise, which are a legally insufficient basis for an award of benefits"); *Burton v. Holden & Martin Lumber Co.*, 112 Vt. 17, 19-20, 20 A.2d 99, 100 (1941) (doctor's statement that infection "could have been a possible contributing cause" of death legally insufficient to support workers' compensation award). Therefore, even if the State had pointed to the doctor's statement as evidence of causation — which it did not — the statement alone would not have been a sufficient basis upon which to send the question of cau-

sation to a jury. Cf. *Dalmer v. State*, 174 Vt. 157, 170, 811 A.2d 1214, 1226 (2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (standards for summary judgment and judgment as a matter of law are essentially the same)).

*Affirmed.*