SKOGLUND, J.
¶ 1. This appeal stems from a probate order approving a special master's proposed division of real property owned by a trust. The trustees of the Marjorie T. Palmer Trust appealed the probate order to the civil division, which granted summary judgment in favor of appellee David C. Palmer, a beneficiary of the trust. On appeal to this Court, the trustees claim the civil division erred in denying their motion for appellee to undergo genetic testing, improperly limited the scope of their appeal from the probate division to three of the seven issues presented in their statement of questions, and erred in granting appellee's nonconforming motion for summary judgment on those three issues. We affirm the majority of the civil division's conclusions but reverse in part for it to consider one of the issues raised in the trustees' statement of questions that it declined to address.
I. Facts
¶ 2. Marjorie T. and Loren F. Palmer executed a trust agreement in July 1992. Loren died sometime before August 2000; the record is unclear as to the precise date of his death. Marjorie died in October 2001, at which point the trust became irrevocable. The trust agreement appointed Marjorie's three children, Loren T. Palmer, Lorelei Kjelleren, and David F. Palmer, as co-trustees. David F. Palmer died in February 2011, leaving Loren T. Palmer and Lorelei Kjelleren to serve as the trustees.
¶ 3. This litigation began in November 2012, when David F. Palmer's son and sole heir, David C. Palmer, filed a petition in probate division to open a trust estate as well as a motion to remove and replace the trustees.[1] He alleged the trustees had mismanaged trust property and refused to provide him with a current copy of the trust agreement.
¶ 4. The trust owns approximately 143 acres of contiguous property in the towns of Charlotte, Shelburne, and Hinesburg, Vermont. Approximately 101 acres are in Charlotte, 10 acres are in Shelburne, and 32 acres are in Hinesburg. Much of the property has historically been used for maple sugaring, and the parties apparently agree that Marjorie Palmer wanted to preserve a large portion of the land for that use. For several years, the trustees have leased portions of the property to David Palmer and to the son of trustee Loren Palmer for their separate sugaring operations.
*626 ¶ 5. Following her husband's death, Marjorie Palmer amended the trust agreement twice, in August 2000 and February 2001. The second amended trust agreement provides as follows:
The Trustees shall distribute to each of the Settlor's grandchildren who, at the time of the Settlor's death, have not been given a building lot in Hinesburg, Vermont by the Settlor, the Settlor's husband, Loren [F.] Palmer, or the Trustees, at the election of each such grandchild, either the sum of Thirty Thousand Dollars ($30,000) or one (1) building lot as hereinafter defined.... Any grandchild who elects to receive a building lot pursuant to this provision shall make such election in writing to the Trustees to receive one (1) building lot to be selected by the Trustees. The Trustees shall give due consideration to any specific requests made by a grandchild with respect to the size and location of such building lot, but shall not be bound by such requests and may make such selection based upon such factors as the Trustees, in their sole discretion, deem relevant. Such election shall be made within one year of the Settlor's death. Failure by a grandchild to make such an election within such time period shall be conclusively deemed an election to receive Thirty Thousand Dollars ($30,000) in lieu of a building lot. For the purpose of this Trust Agreement, a "building lot" shall mean a five to ten acre parcel of land located in Hinesburg, Shelburne, or Charlotte, Vermont with a building site to be used by such grandchild for a personal residence, such building lot to be located on land held in the Trust Fund by the Trustees.
A separate provision stated that the trustees "may require, as a condition of such gift that each such grandchild agree in writing to construct a dwelling house on such parcel which will be used as his or her principal residence." The trust provided that after distribution of the building lots and payments, the remaining trust property would be divided into equal shares and distributed to the beneficiaries. Under the current circumstances, Loren T. Palmer, Lorelei Kjelleren, and David Palmer (as the surviving son of David F. Palmer) are each to receive one share.
¶ 6. At the time Marjorie Palmer executed the second amended trust agreement, three of her seven grandchildren had already received building lots. A fourth grandchild subsequently selected a building lot in Hinesburg and proceeded to build his principal residence, and a fifth took a payment in lieu of a building lot. The two remaining grandchildren, David Palmer and Mark Palmer, notified the trustees within a year of Marjorie's death in 2001 that they wanted a building lot. However, no action was taken on their requests.
¶ 7. In 2012, David Palmer identified a specific parcel in Shelburne that he wanted for his building lot. The trustees rejected his proposed lot because it was a portion of the property that the trustees intended to be the subject of a sale of a conservation easement to the Vermont Land Trust (VLT). The trustees offered him a building lot in Hinesburg instead.
¶ 8. In April 2014, the trustees entered into a purchase and sale agreement with the VLT for the development rights to the 111 acres owned by the trust in Charlotte and Shelburne. The trustees were unable to obtain David Palmer's consent to the sale of the development rights, and the agreement expired. This prompted the probate division to appoint Craig Matanle, Esq., as successor trustee for purposes of determining a fair and equitable division of the 111 acres in Charlotte and Shelburne if the parties were unable to reach agreement *627 by December 2014. No agreement was reached, and in January 2015, the probate division appointed Matanle as trustee of the 111-acre property for purposes of managing it and recommending an equitable division to the court.
¶ 9. Under this initial order, Matanle's role was limited to dividing the 111-acre property in Charlotte and Shelburne. The probate division ordered that Lorelei Kjelleren and Loren Palmer would remain as trustees for the purpose of managing and ultimately distributing the balance of the trust estate. The probate division did not address the fact that grandchild Mark Palmer had not yet received a building lot, apparently because, according to its November 2014 order, he wished at that time to receive a $30,000 payment instead.
¶ 10. In March 2015, the probate division issued an order approving the trustees' decision to assign David Palmer a building lot in Hinesburg. The Hinesburg building lot is not part of the 111-acre property that the trustees intended to conserve. The order required Palmer to begin the permitting process at his own expense and stated that if he did not finish building a primary residence on the lot by May 2020, he would be required to pay the value of the land back to the trustees less $30,000.
¶ 11. Meanwhile, following his appointment as trustee, Matanle met with the parties, toured the trust property, and spoke with representatives from the VLT and the Charlotte Land Trust. He also hired a forester to prepare a report on the number of maple tree taps and recommend an equitable division of the 111-acre property. Based on the forester's report and his investigation, Matanle proposed to the parties in June 2015 that David Palmer be given the northern section of the property, which was contiguous with the Hinesburg building lot and another property he owned.
¶ 12. The trustees objected to the proposal. Among other reasons, they argued that according to an engineering report they had commissioned, the Hinesburg lot they had offered to David Palmer could not actually be developed. The engineering firm reported in August 2015 that "the areas under investigation on the Palmer Property are not considered suitable for any type of on-site wastewater system" according to state regulations.[2] The trustees provided this report to Matanle, who asked the probate division to hold a hearing to address whether the Hinesburg lot should still be conveyed to David Palmer, as it potentially impacted the division of the 111-acre property in Charlotte and Shelburne.
¶ 13. At a hearing in December 2015, Palmer told the court that he still wanted the Hinesburg lot assigned to him by the trustees and would find a way to install a wastewater system. The trustees continued to oppose giving him the Hinesburg lot. The court indicated that despite the trustees' concerns over wastewater, it seemed reasonable to convey the lot to Palmer if he still wanted it.
¶ 14. Following the hearing, the probate division appointed Matanle as special master pursuant to 4 V.S.A. § 363 and Vermont Rule of Probate Procedure 53"with authority to address all outstanding issues relative to the division of the [111-acre] property and David Palmer's building lot." The court did not authorize Matanle to make any determination regarding the rest of the trust property.
*628 ¶ 15. Matanle, now acting as special master, held a hearing in February 2016. The trustees indicated that his June 2015 proposal was unacceptable because it would cut off trustee Loren Palmer's access to his sugarhouse and require him to remove significant portions of his sugaring infrastructure, failed to account for the topography of the property,[3] and would result in an inequitable division of the taps on the property. They argued that because David Palmer had not taken any steps to obtain a building permit for the Hinesburg building lot and it appeared that the lot was not suitable for a homesite, the special master should include the Hinesburg building lot as part of the total property to be divided, and award David and Mark Palmer $30,000 each in lieu of a building lot.
¶ 16. Following the hearing, the trustees' attorney informed the special master that he had learned that the trust owned a right-of-way providing direct access from the public road to a triangular parcel in Shelburne that made up the northernmost portion of the 111-acre property (the Shelburne Triangle). The trustees offered a new proposal: that the Shelburne Triangle be divided into two five-acre building lots to be awarded to David and Mark Palmer. The special master investigated the proposal by meeting with town and land trust officials. He concluded that it was not viable because the Shelburne Triangle contained insufficient acreage to create two buildable lots under town zoning laws.
¶ 17. The special master ultimately issued a report recommending that the court divide the 111-acre property into a 42-acre western portion containing 631 taps, to be assigned to David Palmer, and a 69-acre eastern portion containing 1265 taps, to be assigned to the trustees. He indicated that the VLT had given preliminary approval to this plan. The special master rejected the trustees' proposal to include the Hinesburg building lot in the overall property division, citing the court's March 2015 order and David Palmer's expressed desire to have that lot. He stated that Palmer should move expeditiously to obtain permitting now that a division had been proposed.[4] If the court approved the special master's proposed division, he planned to commission an appraisal and survey to make sure each beneficiary received a relatively equal share, with any imbalances to be equalized with a cash distribution from the trust, and to initiate subdivision proceedings. He also intended to request a license to sell the development rights to the 111-acre property to the VLT.
¶ 18. In June 2016, the probate division adopted the special master's findings and recommendations and ordered him to proceed with the proposed plan. The trustees requested and received permission to appeal the June 2016 decision to the civil division.
¶ 19. In November 2016, the trustees filed a statement of questions with the civil division containing the following issues for which they sought review:
1. Whether David C. Palmer is a beneficiary under the Trust, and the rightful heir at law of David F. Palmer.
2. Whether ... the two remaining grandchildren of the Trust Grantor, *629 David C. Palmer and Mark Palmer are entitled to a building lot, or the payment of $30,000 pursuant to the Second Amendment to the Trust Agreement ... before distributions can be made to other beneficiaries.
3. Whether real property owned by the Trust needs to be sold to pay the administrative expenses incurred to date and expected in the future, and/or need[s] to be sold because they [sic] are beneficial to the Trust and its beneficiaries.
4. Whether the Co-Trustees are now in full control of the administration of the Trust now that the Special Master['s] ... duties have concluded.
5. Whether the Trustees are empowered to go forward with the conservation transaction with the Vermont Land Trust to conserve the Trust's property located in Charlotte, Vermont, and may include property in Shelburne, Vermont.
6. Whether certain items of personal property now in the possession of David Palmer need to be returned to the Trust, or whether the Trust needs to be reimbursed for the value of the personal property.
7. How to distribute the balance of the remaining Trust real property, and remaining assets.
At the same time, the trustees requested that the civil division order David Palmer to submit to genetic testing pursuant to Vermont Rule of Civil Procedure 35. They also sought a license to sell the trust's 32 acres in Hinesburg, including the parcel designated to be assigned to David Palmer.
¶ 20. Palmer moved to dismiss the appeal both as untimely and because the trustees failed to file their statement of questions within thirty days of their notice of appeal, as required by Vermont Rule of Civil Procedure 72(c). The civil division ruled that the notice of appeal was timely and declined to exercise its discretion to dismiss the appeal based on the late filing of the statement of questions. However, it determined that only the third, fourth, and fifth questions were properly before it on appeal, and stated that it would limit its review to these issues. It denied the trustees' motion for genetic testing on the ground that the probate division had entered a final decision on that issue in October 2014, which the trustees had failed to appeal.
¶ 21. The trustees moved for reconsideration. They argued that the civil division should address their second question because the special master's report awarded David Palmer a building lot but failed to address whether Mark Palmer should receive one. They also claimed that the probate division's October 2014 order denying their motion for genetic testing was an interlocutory discovery order and did not preclude the civil division from addressing that issue. David Palmer opposed the motion to reconsider and moved for summary judgment on the three remaining questions. In response, the trustees filed their own motion for summary judgment.
¶ 22. The civil division denied the motion to reconsider. It reiterated that the probate division's order was final on the issue of genetic testing and that the sixth and seventh questions were unrelated to the special master's report. As for the second question, it held that the probate division had finally addressed the issue of David and Mark Palmer's building lots in the October 2014 and March 2015 orders, neither of which were appealed.
¶ 23. The civil division then addressed the cross-motions for summary judgment on the three remaining questions-whether the trust's real property had to be sold *630 to cover administrative expenses, whether the trustees were back in full control of the trust, and whether the trustees were empowered to go forward with the conservation transaction with the VLT. The civil division concluded, in essence, that the first question was premature because the VLT transaction had not yet taken place. If the proceeds from that transaction did not cover expenses, the trust had property besides the Hinesburg building lot that it could sell. The civil division stated it would not be equitable or reasonable to prevent David Palmer from receiving that lot. It therefore denied permission for the trustees to sell the Hinesburg property before he received it. The civil division also held that the special master's duties had not yet concluded, so the transfer of a lot to David Palmer and the VLT transaction remained within his control. It declined to address whether the special master's proposed division would result in a fair and equitable distribution to beneficiaries, finding that question to be outside the scope of issues on appeal. The court denied the trustees' motion for summary judgment, granted summary judgment to David Palmer, and remanded the case to the probate division. The trustees appealed to this Court.
II. Analysis
¶ 24. On appeal, the trustees argue that the civil division erred in (1) denying their motion for genetic testing; (2) limiting the scope of their appeal to the third, fourth, and fifth questions identified in their statement of questions and declining to address their argument that the special master's proposed division was inequitable; and (3) denying their motion for summary judgment and granting summary judgment to David Palmer even though his motion failed to comply with Civil Rule 56. We affirm the civil division's decision on the first and third claims, but reverse in part on the second.
A. Motion for Genetic Testing
¶ 25. The trustees first claim that the civil division erred in denying their motion for genetic testing. They argue that the probate division's October 2014 decision on that issue was an interlocutory discovery decision rather than a final order regarding David Palmer's status as an heir, and did not prevent them from raising the issue again in the civil division. We disagree.
¶ 26. In September 2014, the trustees moved in the probate division for genetic testing of David C. Palmer to verify that he is the biological child of David F. Palmer.[5] They argued that David C.'s mother was never married to David F. Palmer. They also submitted an affidavit from a former partner of David F. suggesting that he was unable to have children of his own.
¶ 27. In an October 2014 entry order, the probate division denied the motion. The court reasoned that although David C. was named "David Christopher Bora" at birth, his last name was later changed to Palmer, presumably with the consent of his putative father David F. Palmer. David F. treated David C. as his son until his death, and David C. was the sole beneficiary of his estate. Further, David C. was specifically named as a grandchild of Marjorie Palmer in the second amended trust agreement. Although the trustees alleged that David F. questioned whether David C. was his son, there was no evidence that *631 David F. ever attempted to formally determine parentage. Instead, he held David C. out to the world as his son throughout his lifetime. The court found it unlikely that Marjorie Palmer would want to disinherit David C. under these circumstances. The trustees did not appeal the probate division's decision.
¶ 28. In November 2016, the trustees renewed their motion for genetic testing in the civil division, arguing that it was genuinely disputed whether David C. was the biological son of David F. Palmer. See V.R.C.P. 35 (permitting trial court to order party to submit to physical or mental examination when that party's mental or physical condition is in controversy). The civil division denied the motion on the ground that the probate division had finally decided the issue of whether David C. was David F.'s son and rightful heir in October 2014, and that decision was not appealed. It further ruled that even if the question were properly before it, it would deny the motion for the same reasons as the probate division.
¶ 29. An interested party may take an appeal from the probate division to the civil division "if the order appealed from is final as to the subject matter before the court." In re Estate of Seward, 139 Vt. 623, 624, 433 A.2d 274, 274 (1981) ; 12 V.S.A. § 2555. An order is final if "the decree or judgment disposed of all matters that should or could properly be settled at the time and in the proceeding then before the court." In re Estate of Webster, 117 Vt. 550, 552, 96 A.2d 816, 817 (1953). A party seeking to challenge a final order of the probate division must file a notice of appeal within thirty days of entry of the order. V.R.C.P. 72(a) ; V.R.A.P. 3, 4. "[T]he timely filing of the notice of appeal is a jurisdictional requirement." In re Guardianship of L.B., 147 Vt. 82, 84, 510 A.2d 1319, 1321 (1986). If a final order of the probate division is not timely appealed, the civil division lacks jurisdiction to review it.
¶ 30. Vermont has no statute or rule defining what specific types of probate orders are final and appealable. A review of our decisions in this area reveals that we have frequently treated probate orders as final even where they did not dispose of the entire probate proceeding. See In re Tr. Estate of Flynn, 158 Vt. 268, 270-71, 609 A.2d 984, 986 (1992) (taking jurisdiction of appeal from probate court orders granting motions to intervene and replace trustee of estate); In re Cary's Estate, 81 Vt. 112, 121, 69 A. 736, 739 (1908) (holding that probate court order denying remaindermen's petition to compel accounting by trustee of life estate "was final as to the petitioners and one from which they could appeal"); In re Bellows' Estate, 60 Vt. 224, 227, 14 A. 697, 699 (1888) (holding superior court erred in dismissing appeal from probate court order removing executor); State v. McKown, 21 Vt. 503, 507 (1849) (holding that guardian had right to immediately appeal probate court order removing him as guardian and appointing another). Although in general we avoid piecemeal review, In re J.G., 160 Vt. 250, 255, 627 A.2d 362, 365 (1993), these decisions implicitly recognize that probate proceedings are frequently lengthy and involve a series of decisions on discrete issues that may be appropriate for immediate review. See De Ayala v. Mackie, 193 S.W.3d 575, 578 (Tex. 2006) ("Probate proceedings are an exception to the 'one final judgment' rule; in such cases, multiple judgments final for purposes of appeal can be rendered on certain discrete issues. The need to review controlling, intermediate decisions before an error can harm later phases of the proceeding has been held to justify this rule." (quotations omitted) ).
¶ 31. Courts in other jurisdictions have recognized that probate court decisions regarding *632 whether particular individuals are heirs are final appealable orders. See Murphy v. McCloud, 650 A.2d 202, 206 (D.C. 1994) (holding probate order declaring that petitioner was daughter of intestate decedent was final appealable order even though administration of estate continued); In re Estate of Hutchins, 120 Ill.App.3d 1084, 76 Ill.Dec. 556, 458 N.E.2d 1356, 1357 (1984) (determining that order of probate court denying motion to vacate order establishing heirship was final appealable order under court rule providing that order entered in administration of estate which finally determines status of party is appealable as of right); In re Dodge Testamentary Tr., 121 Mich.App. 527, 330 N.W.2d 72, 78 (1982) (holding probate court order determining who was heir under testamentary trust was final appealable order); In re Estate of Berger, 185 Neb. 702, 178 N.W.2d 585, 587 (1970) ("A decree determining the heirs and the right of descent of real and personal property is by statute declared to be a final order and, unless appealed from, is binding and conclusive."). It makes sense to treat an order of this type as final and appealable because the identity of heirs and beneficiaries is fundamental to a probate proceeding and affects not only their substantive rights but the rights of all parties in the matter. Requiring parties to resolve disputes regarding who is entitled to distribution from an estate early in the proceeding is in everyone's best interests.
¶ 32. For these reasons, we agree with the civil division that the October 2014 decision of the probate division was a final appealable order because it conclusively determined the discrete issue then before the court: whether David C. Palmer was David F. Palmer's heir and a beneficiary of the trust. It was not merely an interlocutory discovery order. The order left nothing to be decided with regard to the issue of whether David C. Palmer was entitled to distribution under the trust. Accordingly, the trustees' failure to appeal that order within thirty days deprived the civil division of jurisdiction to review it. See In re Guardianship of L.B., 147 Vt. at 84, 510 A.2d at 1321 ("[T]imely filing of the notice of appeal is a jurisdictional requirement."); In re Beer, 2010 VT 31, ¶ 11, 187 Vt. 641, 996 A.2d 225 (mem.) (holding that alleged abuser's failure to timely appeal decision of Department for Children and Families substantiating abuse and placing abuser's name on child abuse and neglect registry precluded Human Services Board from having jurisdiction to review decision). We therefore affirm the civil division's denial of the trustees' motion for genetic testing.
B. Scope of Appeal to Civil Division
¶ 33. Next, the trustees argue that the civil division erred in limiting its review to only three of the seven questions presented in their statement of questions. They claim that the first, second, sixth, and seventh questions were all related to the special master's report and the probate order being appealed and should have been considered below. They also argue that the court should have addressed their argument that the special master's proposed division was inequitable. Although we affirm most of the court's conclusions, we agree with the trustees that the civil division ought to have addressed the issue of Mark Palmer's building lot, and therefore reverse and remand for consideration of that issue.
¶ 34. Vermont Rule of Civil Procedure 72 governs appeals from the probate division to the civil division and requires the appellant to file a statement of questions. V.R.C.P. 72(c). Because appeal to the civil division is de novo and no pleadings are required, the statement of questions serves to focus the issues for the court.
*633 In re Estate of Doran, 2010 VT 13, ¶ 14, 187 Vt. 349, 993 A.2d 436. The statement does not limit the court's review, however; it may exercise its discretion to address issues related to questions posed by an appellant. Id.
¶ 35. Here, the civil division properly declined to consider the first, sixth, and seventh questions identified by the trustees. The first question-whether David C. Palmer is a beneficiary under the trust and David F. Palmer's heir-was resolved by the probate division's unappealed October 2014 order. That issue is no longer open for review. The sixth and seventh questions, on the other hand, relate to matters that had not yet been resolved by the probate division and are therefore not yet ripe for appellate review. In re Robinson/Keir P'ship, 154 Vt. 50, 57, 573 A.2d 1188, 1192 (1990) ("Courts will ordinarily not render decisions involving events that are contingent upon circumstances that may or may not occur in the future."). The probate order did not purport to completely dispose of the proceedings. Whether David Palmer possesses certain items of personal property that rightfully belong to the trust, and how to distribute the remaining real property and assets of the trust, are matters that the probate division must address in the first instance.
¶ 36. As for the second question, we agree with the civil division that the issue of David Palmer's entitlement to the Hinesburg building lot was finally resolved by the March 2015 probate order. That order was a partial distribution, which was not appealed and therefore can no longer be challenged. See In re Estate of Everett, 114 Vt. 256, 262, 44 A.2d 149, 153 (1945) (holding that where no appeal was taken from probate division's previous order of partial distribution of estate, legatee could not challenge accounting underlying that distribution in later appeal). Like the civil division, we do not view the probate division's subsequent authorization for the special master to "address all outstanding issues relative to ... David C. Palmer's lot" as reopening its March 2015 decision. Rather, the quoted language simply meant that the special master was responsible for overseeing the subdivision and transfer of the lot to David Palmer.
¶ 37. However, the civil division should have addressed the second question to the extent that it involved Mark Palmer's entitlement to a building lot. The court reasoned that this issue was finally resolved by the probate division in an unappealed October 2014 order, and therefore the civil division lacked jurisdiction to consider it. This was incorrect. The October 2014 order referred to by the civil division simply ruled that the trustees had full discretion to approve or disapprove a particular grandchild's choice of building lot. It did not address, let alone conclusively decide, whether Mark Palmer would receive a building lot or where the lot would be. These issues were never finally resolved by the probate division.
¶ 38. This posed a problem because under the terms of the trust, all of the grandchildren had to receive their building lots or payments before any other property could be distributed. The probate division approved the special master's proposed division of the bulk of the trust's property without resolving the threshold matter of Mark Palmer's lot. According to the trustees, this made it impossible for them to fulfill Marjorie Palmer's intention to provide building lots for every grandchild because the Hinesburg property is undevelopable and therefore Mark's lot will likely need to be carved out of the 111-acre property. This argument was relevant to the decision being appealed and should have been addressed by the civil division. We therefore reverse and remand for the civil division to either address the issue of *634 Mark Palmer's building lot or remand the matter to the probate division for resolution before division of the remaining real property or transfer of development rights.
¶ 39. The trustees also argue that the civil division should have addressed their argument that the special master's proposed division of the 111-acre property would result in an inequitable distribution to certain beneficiaries, i.e., themselves, because the parcel to be assigned to David Palmer was allegedly worth much more than the property they were to receive. However, the trustees did not present this issue in their statement of questions to the civil division. Nor was resolution of this issue essential to deciding the questions presented. Although the civil division is not limited to considering the issues explicitly stated in the statement of questions, and may consider issues that are logically related to those questions, see Estate of Doran, 2010 VT 13, ¶ 14, 187 Vt. 349, 993 A.2d 436, we have never held that it is required to decide matters that are not presented by the appellant. The court therefore acted within its discretion in declining to address the fairness of the proposed property division.[6]
C. Summary Judgment
¶ 40. Finally, the trustees argue that the trial court erred in granting summary judgment to David Palmer on their third, fourth, and fifth questions because he failed to submit a statement of undisputed facts or exhibits in support of his motion.
¶ 41. Under Vermont Rule of Civil Procedure 56, a party asserting that a fact cannot be genuinely disputed must support the assertion with a separate statement of undisputed facts consisting of numbered paragraphs containing specific citations to admissible evidence in the record. V.R.C.P. 56(c)(1)-(2). "Unfortunately, trial courts are often in the position of adjudicating summary-judgment motions on the basis of nonconforming documents." State v. Great Ne. Prods., Inc., 2008 VT 13, ¶ 6, 183 Vt. 579, 945 A.2d 897 (mem.). For this reason, we "will not disturb a trial court's reliance on a nonconforming summary-judgment motion absent an objection or absent prejudice." Id. (citation omitted).
¶ 42. The trustees have failed to show that they were prejudiced by the court's consideration of Palmer's summary judgment motion. The trustees were provided notice and an opportunity to respond to the motion, and did so by objecting to the form of the motion and filing their own cross-motion for summary judgment. The trial court relied upon the trustees' statement of undisputed facts and the record of the proceedings in the probate division in rendering its decision. Thus, we see no prejudice here.
¶ 43. Nor do we agree with the trustees' suggestion that they were automatically entitled to summary judgment because Palmer did not oppose their cross-motion or submit his own statement of disputed facts. "[T]he failure to respond does not require an automatic summary judgment." Miller v. Merchants Bank, 138 Vt. 235, 238, 415 A.2d 196, 198 (1980). The moving party is still required to show that no material facts are genuinely disputed and that it is entitled to judgment as a matter of law. Id. Here, the civil division *635 generally accepted the facts as stated by the trustees but determined that they were not entitled to summary judgment on the three issues before the court.[7]
¶ 44. We agree with the civil division's conclusion. The trustees' third question was whether the trust needed to immediately sell real property to pay its administrative expenses. The trustees proposed to sell all of the land in Hinesburg to cover these expenses. They claimed that it was undisputed that the land was undevelopable and that Palmer had not begun the permitting process to build a home on the parcel assigned to him. Thus, they argued, the civil division could rule as a matter of law that the Hinesburg property should be sold. The civil division properly declined to grant the requested relief because, contrary to the trustees' argument, it was not yet clear that the trust needed to sell any real property, as the anticipated VLT transaction could potentially provide enough income to satisfy the trust's expenses. The issue was therefore not yet ripe for review. The requested relief was also unavailable because David Palmer was entitled to receive the Hinesburg lot under the probate court's final order of March 2015.
¶ 45. As to the fourth and fifth questions presented by the trustees, both the special master's report and the probate division's order approving that report make clear that the special master's duties have not yet concluded. The division of the 111-acre property is not final and may change depending on how the court resolves the issues of Mark Palmer's building lot. The trustees are therefore not yet in "full control" of the trust. Accordingly, the civil division properly granted summary judgment to David Palmer on these issues.
Affirmed in all respects, except the matter is reversed and remanded for the civil division to address the issue of Mark Palmer's building lot.

We refer to appellee David C. Palmer as "David Palmer" or "Palmer" throughout this opinion, except where the use of his full name is necessary to avoid confusion.

It is unclear whether the engineering firm investigated all of the property held by the trust in Hinesburg, or just the building lot to be assigned to David Palmer. The trustees assert that none of the trust property in Hinesburg is developable.

According to the trustees, the property logically should be divided into eastern and western sections because that will allow maple sap to flow downhill toward the respective sap collection units operated by David Palmer and his cousin.

As of November 2017, David Palmer had not taken any steps to obtain building permits.

This motion was filed around the time that the trustees were attempting to obtain David Palmer's consent to the VLT transaction. As the probate division noted, "[a]ny potential for congenial negotiations was fundamentally destroyed" by the motion for genetic testing. The deterioration of the relationship between the parties led the court to appoint Matanle as successor trustee.

Even if they had properly presented the question to the civil division, it was premature. As discussed above, the issue of Mark Palmer's building lot has yet to be resolved and may alter the proposed division. Moreover, the special master specifically noted that his proposed division was contingent on a survey and appraisal to ensure that the beneficiaries received approximately equal shares.

Because we conclude above that the civil division acted within its discretion in declining to address the fairness of the property division, we need not address the trustees' argument that the court improperly discounted Lorelei Kjelleren's opinion regarding the fair market value of the Shelburne property. The value of the property was not relevant to the issues actually before the court.