Filed 04/13/26

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-04368

| Desiree Simona Mears v. AVM Builder Supply LLC et al |
|---|

## ENTRY REGARDING MOTION

Title:      Motion for Partial Summary Judgment; Cross Motion for Summary Judgment ;
(Motion: 5; 6)
Filer:      Ember Tilton; Bridget O. Brett
Filed Date:      January 26, 2026; February 25, 2026

The motion is GRANTED IN PART and DENIED IN PART.

Plaintiff Mears' motion for partial summary judgment is **Denied**; Defendant AVM's cross-motion for summary judgment is **Granted in part and Denied in part**.

Plaintiff Desiree Simona Mears alleges that she purchased windows and doors for the construction of a new house from Defendant AVM Builder Supply LLC, which is located in South Carolina. AVM attempted a partial delivery many months later than the contract provided. Ms. Mears rejected the partial delivery and has sought a refund. AVM has refused to refund the full contract price. In the complaint, Ms. Mears claims breach of contract and a violation of the Vermont Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2466c. AVM claims that any delays in shipment were caused by customs officials and were completely out of its control. It asserts that under the terms and conditions applicable to the parties' contract, South Carolina rather than Vermont law applies to this case (i.e., the Vermont CPA does not apply), it can have no liability for the delay, no refunds are permitted. The parties have filed cross-motions for summary judgment.

### Procedural Standard

Summary judgment procedure is properly regarded as "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred

1

to in the statements required by V.R.C.P. 56(c), shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. V.R.C.P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994). In assessing a motion for summary judgment, the court views all facts and indulges all inferences in favor of the non-moving party. *Price v. Leland*, 149 Vt. 518, 521 (1988). Where, as here, there are cross-motions for summary judgment, the parties opposing summary judgment "are entitled to the benefit of all reasonable doubts and inferences." *Montgomery v. Devoid*, 2006 VT 127, ¶ 9, 181 Vt. 154. Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375.

In the present case, both parties have been inconsistent with the procedural requirements of Rule 56. Ms. Mears' statement of undisputed facts consists of 6 allegations, but they each lack specific citation to evidence in the record. See V.R.C.P. 56(c)(1) (statements must include "specific citations to particular parts of materials in the record"). Moreover, her briefing, particularly in opposition to AVM's motion, includes extensive factual representations that go well beyond her primary statement of undisputed material facts and do not appear in any corresponding responsive statement, which is required under Rule 56(c)(2) to AVM's own statement of undisputed material facts.

For its part, AVM filed a combined "statement of disputed facts and undisputed facts in response to Plaintiff's undisputed facts." The first six paragraphs of AVM's statement consist of responses to Ms. Mears' allegations, but AVM failed, in derogation of the Rule, to reproduce Ms. Mears' numbered paragraphs before each reply. V.R.C.P. 56(c)(2). AVM also did not include its own, separate statement of undisputed facts in support of its own motion. Instead, at the end of its replies to Ms. Mears' facts, it added the following:

> 7. Defendant asserts that the entirety of the Declaration of Michael Tsisun contains undisputed facts in this matter.
> 8. Defendant asserts that the entirety of the Declaration of Bridget Brett, Esq. contains undisputed facts in this matter.

Such procedural shorthand is inappropriate and inconsistent with Rules 56(c)(2) and (3); id. at Reporter's Notes—2022 Amendment ("Rules 56(c)(2) and (c)(3) have been added to make explicit the requirements that responses to the movant's statement of undisputed facts are to be provided in numbered paragraphs corresponding to those of the movant's statement, and that statements of additional facts—disputed or undisputed—are to be submitted in a separate

2

statement, with numbered paragraphs."). The entirety of a declaration is not a "fact" that is either disputed or undisputed for purposes of Rule 56(c).

Finally, the Court notes that neither party filed any Rule 56(c)(3) replies.

Apart from the technical deficiencies, Ms. Mears' statement does not provide any of the context or nuances in how the contract arose, what its terms may be, and how the events unfolded that culminated in her cancelation. AVM's statement is similarly not calculated to address the threshold question of the applicability of the "terms and conditions" appearing on its website, which it assumes without analysis or legal support are part of the parties' contract.

On balance, the parties' nonconforming statements and conclusory briefing limit the court's ability to rule on the proposed scope of the motions. "Unfortunately, trial courts are often in the position of adjudicating summary-judgment motions on the basis of nonconforming documents." *State v. Great Ne. Prods., Inc.*, 2008 VT 13, ¶ 6, 183 Vt. 579. Doing so generally is not error unless there is an objection (here there is not) or prejudice will result. *Id*.

**Legal Analysis**

The court concludes that most of the facts concerning Ms. Mears' breach of contract claim remain either disputed, or too undeveloped on the record for the court to rule as a matter of law.

A. *Contract Terms*

B.

Notwithstanding, this much of the parties' relationship appears to be undisputed. Ms. Mears and AVM executed a contract by which AVM was to deliver custom-ordered windows and doors within 8 to 10 weeks.[1] AVM was unable to deliver the products in that timeframe, ostensibly due to some kind of delay caused by customs.[2] As the delay grew, the parties communicated by text. AVM took the position (at least superficially consistent with its terms

---

[1] Ms. Mears alleges in her complaint that the windows and doors were "custom." In her deposition, she states that they were not custom but had entirely standard dimensions. The factual issue is not developed in either party's factual statement, but the custom nature of the materials, presumably, is, to some extent, why the contract price was not refundable once the order went to the manufacturer.

[2] AVM describes the customs delay as an established fact in briefing, but nothing about it appears in its statement of facts. The closest the record comes to explaining the delay appears in the qualified declaration of Michael Tsisun at ¶ 17: "So far as I understand, the doors had been part of a container that had been detained by [U.S. Customs and Border Protection." There is no similar representation as to the windows or admissible evidence to fully explain this material fact.

and conditions) that it was neither liable for the delay nor for providing any refund. After many months of delay, AVM attempted a partial delivery, asserting at that time that Ms. Mears had to pay an additional delivery charge of $100. The only evidence of the contract in the record says nothing about a $100 delivery charge. At this point, Ms. Mears refused the delivery, canceled the order entirely, and the parties began negotiating over a refund. An agreement to Ms. Mears' satisfaction never materialized, and Ms. Mears filed this suit.

At a minimum, the "terms and conditions," which either are or are not applicable to the parties' contract, loom large over the parties' respective arguments concerning their contractual rights and obligations. These "terms and conditions" provisions are found on AVM's website and include: (1) a clear choice of law term, (2) an express provision for how delays caused by third parties are handled, and (3) a limit on refunds to the first 3 days after purchase. AVM, in its briefing, assumes that the "terms and conditions" are part of the contract because they appear on its website. Ms. Mears takes the position, however, that they do not apply to the contract because of (A) the limited way in which they appear on the website, (B) how the parties' contract actually was negotiated and executed (according to her, directly with a sales representative off the website), and (C) the lack of any other evidence that they were incorporated into the contract.

The court declines to rule on the applicability of the "terms and conditions" at this time. Neither of the parties' statements of fact are tailored to this issue. AVM hardly addresses the issue at all beyond assuming that they apply. Even if the Court shared this assumption, AVM does not explain how they apply. The provision that says AVM is not liable for delay caused by a third party presumably must be subject to some kind of a reasonableness limitation, which is presumably at issue here. In other words, the term cannot be construed to mean that AVM may keep its customer's money forever while not delivering the items purchased so long as it can point to someone else's nonperformance as the reason for the lack of delivery. At some point, delay, even from a third-party, turns into a failure to perform. As noted above, Ms. Mears' relevant allegations appear principally in her briefing, are conclusory in nature, and appear to lack the relevant context. See *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 578 (1988) (noting that "plain meaning cannot exist in a vacuum"). Without knowing whether or how the "terms and conditions" apply, the court declines to further address the breach of contract claim.

4

## C. *Consumer Protection Claims*

The CPA claim—assuming without deciding that Vermont law applies to this case—is another matter. Ms. Mears largely relies on Attorney General Rule CF 105(c), (d). The CPA directs the Attorney General to adopt rules "relating to unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(c). The violation of such a rule "is prima facie proof of the commission of an unfair or deceptive act in commerce." 9 V.S.A. § 2453(d). The reference to "prima facie proof" presumably refers to a rebuttable presumption, not liability per se. See Black's Law Dictionary (12th ed. 2024), prima facie case.

Ms. Mears appears to understand AG Rule CF 105(c), (d), to establish per se liability (not a rebuttable presumption) under the CPA if a good is not delivered within 6 weeks. Those provisions are as follows:

> It shall constitute an unfair and deceptive trade act and practice in commerce under 9 V.S.A. Section 2453(a) for a seller or solicitor:
>
> .  .  .
>
> (c) To accept an order for goods or services where the seller knows that delivery of such goods or services cannot be made within six weeks, unless a later delivery date is agreed upon, in writing if the order is written, by the buyer and the seller; provided, however, that if the seller does not know whether the goods or services can be delivered within six weeks, acceptance of the order shall not be considered to be an unfair or deceptive act if, prior to accepting the order, the seller advises the buyer, in writing if the order is written, that the delivery date is unknown;
>
> (d) To accept money from a consumer for goods ordered by mail, telephone, or otherwise and then, unless a later delivery date is specifically agreed upon in writing by the buyer and seller, to permit six weeks to elapse without:
> > (1) Making shipment or delivery of the goods ordered, as long as such goods conform to samples submitted or to specifications upon which the sale is consummated or induced, or to the representations made prior to securing the order; or
> > (2) Making a full refund; or
> > (3) Advising the consumer of the duration of an extended delay and offering to send him an immediate refund, or to send or deliver the ordered goods

when they become available, whichever the consumer so requests, and, in such case, to act according to the consumer's request; or

(4) In the case of mail orders and/or mail delivery, furnishing substitute goods of equivalent or superior value and quality as a good faith substitute. In such case, the consumer shall have the right to return such goods, and if the consumer should return the goods to the seller, the seller shall, within fourteen days of the seller's receipt of the goods, refund the amount of money paid by the consumer, including all shipping costs.

AG Rule CF 105(c), (d).

Neither provision applies to this case. The parties' original written agreement was not silent as to the timeframe for delivery. It expressly indicated that delivery originally was anticipated in 8–10 weeks. Both provisions essentially set 6 weeks as a reasonable time for delivery "unless a later delivery date" is agreed upon. Here, a later delivery date was agreed upon from the outset. The parties in this case knew when the contract was executed that 6 weeks was not a reasonable time for delivery, and the contract expressly provided a lengthier delivery time. Rule CF 105(c), (d) do not apply in these circumstances.

Furthermore, it is undisputed that the parties had numerous communications in which AVM notified Ms. Mears of continuing delays, and Ms. Mears affirmed her desire to still receive the doors and windows. She claims that did so under "duress" (referring to her belief that no refund was permitted), but the point is that this is not a case where AVM took her money, and she had no idea it would take longer than 6 weeks to receive the doors and windows, with no follow up from AVM. The Attorney General's CPA Rules must be interpreted reasonably to achieve the goals of the CPA and not to turn an ordinary "good faith" contract dispute into an automatic CPA violation. *Christie v. Dalmig, Inc*., 136 Vt. 597, 601 (1979).

Beyond this, Ms. Mears' cogent claim in this case is that she bought doors and windows from AVM, and AVM did not deliver them in a reasonable time. That is, the parties had a contract, and AVM failed to perform. That is a run-of-the-mill breach of contract claim, not a CPA claim. See *EBWS, LLC v. Britly Corp*., 2007 VT 37, ¶ 28, 181 Vt. 513 (allegations of "poor construction" insufficient to support a CPA claim); *Winey v. William E. Dailey, Inc*., 161 Vt. 129, 136 (1993) ("We have cautioned against confusing principles of contract with principles of fraud so that the elements of fraud are made out by a mere breach of contract."); *Bevins v. King*, 147 Vt. 203, 204 (1986) (independent cause of action for fraud must be predicated on

6

fraud that is "extrinsic" to the contract). Ms. Mears, in her deposition, concedes that the delays were unanticipated when the parties executed the contract:

> Q. Is it fair to say that based on your communications with Mike [sales representative] and at the time of the purchase he was unaware that the shipment would be held up by customs?
>
> A. Yes.
>
> Q. And is it fair to say that Mike attempted to work with you to arrange for shipment of the doors and windows despite these unanticipated delays?
>
> A. Yes.

The course of events may have resulted in a breach of contract, but there is no evidence of any deception, unfair practice, or other violation of the CPA. Nor is there any such evidence after Ms. Mears refused the shipment and canceled the contract altogether. At that point, despite its professed belief that Ms. Mears was not entitled to any refund, AVM attempted to negotiate a partial refund with her. It did not simply take the money and run.

As such, AVM is entitled to summary judgment on Ms. Mears' CPA claim.[3] These claims are dismissed as a matter of law.

## ORDER

For the foregoing reasons, Ms. Mears' motion for partial summary judgment is **Denied**; AVM's motion for summary judgment is **Granted in part and Denied in part**.

Electronically signed on 4/10/2026 5:29 PM pursuant to V.R.E.F. 9(d)

_____
Daniel P. Richardson
Superior Court Judge

_____

[3] The court notes that, in addition to statutory CPA damages, Ms. Mears seeks common law punitive damages. Punitive damages generally are not permitted in breach of contract cases. See *Clarendon Mobile Home Sales, Inc. v. Fitzgerald*, 135 Vt. 594, 596 (1977) ("Punitive damages are generally not recoverable in actions for breach of contract. However, in certain extraordinary cases in which the breach has the character of a wilful and wanton or fraudulent tort, punitive damages may be allowed. Punitive damages are awarded not as compensation to the sufferer, but 'on account of the bad spirit and wrong intention' of the breachor." (citations omitted)); accord *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 53, 179 Vt. 167.